IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 18-576-4 |
| | : | |
| RAHIM AMIN | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                   **April 21, 2022**

Rahim Amin pleaded guilty to drug and weapons offenses days before we began a drug conspiracy trial based on a superseding indictment naming him and several other persons. He agreed to accept a term of 180 months of incarceration after an extensive plea colloquy subject to our accepting the parties' recommendation at sentencing. We analyzed the United States' lengthy recitation of the facts supporting a finding of guilt on the charge of drug trafficking conspiracy. Mr. Amin agreed he did the things charged by the grand jury relating to the conspiracy. He agreed being fully prepared for the plea and spoke to his counsel about the charge, the facts, and the recommended sentence.  We accepted him at his word finding his admissions to be credible. We sentenced him to a term of 180 months imprisonment and a five-year term of supervised release.

Mr. Amin returns a year later with buyer's remorse.  He seeks to vacate, set aside, or correct his recommended sentence claiming ineffective assistance of counsel caused an unknowing and involuntary plea, his proposed sentence is illegal and based on incorrect Sentencing Guidelines, and a change in the law requires we vacate the earlier sentence. The United States opposes the motion. We find his petition is frivolous based on the uncontradicted record requiring we deny an evidentiary hearing and his petition for habeas relief. We find no need for an evidentiary hearing and no ground for a certificate of appealability.

**I.     Background**

Our grand jury issued a superseding indictment of Rahim Amin on March 20, 2019 charging him with participating in an overarching conspiracy to knowingly and intentionally distribute controlled substances through a series of specifically plead overt acts.[1] We appointed Trevon Borum, Esquire from our Criminal Justice Act Panel to represent Mr. Amin on March 27, 2019. Mr. Amin plead not guilty on April 1, 2019.  We held a conference with counsel (including Attorney Borum) on April 12, 2019 and set a trial date for all defendants beginning on December 3, 2019.[2] Three of the charged defendants agreed to plead guilty in June and July 2019.

Attorney Borum did not seek relief during his appointed representation. We learned Attorney Borum could not physically prepare and present evidence at our December 2019 trial from another attorney during an October 24, 2019 hearing. We appointed Jeremy Ibrahim, Esquire from the Criminal Justice Act Panel on October 24, 2019.[3]

The grand jury issued a second superseding indictment on November 13, 2019 charging Mr. Amin and seven other co-conspirators, including Damir Skipworth, with distribution of controlled substances and weapons offenses in the Skipworth-led drug trafficking organization distributing methamphetamine, heroin, fentanyl, cocaine, and other controlled substances in the Philadelphia area.[4] The grand jury charged Mr. Amin with conspiracy in the Skipworth drug trafficking organization to distribute 500 grams or more of methamphetamine and 100 grams or more of heroin, and fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and (b)(1)(B); possession with the intent to distribute five grams or more of methamphetamine, heroin, cocaine, cocaine base, and phencyclidine ("PCP") in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C); and, possession of a firearm in furtherance of a drug trafficking crime in violation of 18

2

U.S.C. § 924(c)(1)(A)(i). The grand jury also charged Mr. Amin with possessing a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1).[5]

Attorney Ibrahim promptly filed four motions to preclude or suppress evidence including argument some physical evidence may relate to other persons charged in the superseding indictment but not Mr. Amin. We held a hearing. We denied Mr. Amin's substantive well-grounded arguments as to statements in our November 25, 2019 Order.[6] Mr. Amin separately withdrew his motion relating the seizure of physical evidence.[7]

### *Mr. Amin's plea agreement with the United States and our plea hearing.*

Mr. Amin entered into a guilty plea agreement with the United States two days after we denied his motions. He agreed to a plea where the United States and his counsel would jointly recommend a sentence under Federal Rule of Civil Procedure 11(c)(1)(C).[8] Mr. Amin agreed to plead guilty to the four charges against him in the second superseding indictment and agreed and understood the Court may impose statutory maximum and mandatory minimum sentences, including a ten-year mandatory minimum for the conspiracy to distribute controlled substances charge.[9] By agreeing to plead guilty to the conspiracy charge, Mr. Amin agreed the conspiracy included the distribution of 500 grams or more of methamphetamine and 100 grams or more of heroin.[10] Mr. Amin agreed to a sentence of 180 months' imprisonment, a five-year period of supervised release, a fine, if any, in an amount within the Court's discretion, and a $400 special assessment.[11] The United States agreed to withdraw the information charging the earlier offenses and the felon in possession charge.[12]

Mr. Amin waived his right to appeal or collaterally attack his conviction and sentence, expressly waiving an argument (1) the statutes to which he pleaded guilty are unconstitutional, and

(2) the admitted conduct does not fall within the scope of the statutes.[13] He retained his right to file a claim of constitutionally ineffective assistance of counsel.[14]

Attorney Ibrahim continued to represent Mr. Amin. Mr. Amin represented in our plea colloquy with Attorney Ibrahim next to him: his attorney answered all his questions about the second superseding indictment and answered all his questions about the plea and sentencing; his satisfaction with representation provided by Attorney Ibrahim; there is nothing he asked Attorney Ibrahim to do that Attorney Ibrahim did not do; no one threatened or forced him to plead guilty; his plea is of his own free will and decision and not his attorney's decision; he understood he may be forfeiting certain rights by pleading guilty; he read the plea agreement before signing it and discussed it with Attorney Ibrahim; he had sufficient time to speak with Attorney Ibrahim and did not request additional time for further consultation; and he understood the plea agreement, including the mandatory minimum sentence for the offenses.[15] Mr. Amin understood the charges against him and Attorney Ibrahim explained the elements of the charges.

We explained to Mr. Amin, and he said he understood, we could sentence him to the maximum term set by Congress if he entered a guilty plea.[16] We explained to Mr. Amin, and he confirmed he understood, we do not have to accept the 180-month term recommended by the United States. We explained to Mr. Amin, and he confirmed he understood, if we did not accept the recommended term, he can withdraw his guilty plea. We explained to Mr. Amin, and he confirmed he understood, if we did not accept the sentence recommended by the United States, the maximum sentence he could receive is life in prison and would include a mandatory minimum sentence of twenty years, followed by a mandatory minimum of five years supervised release, a fine, and special assessment, and forfeiture.[17]

Attorney Ibrahim reviewed the Sentencing Guidelines with Mr. Amin.[18] We explained to Mr. Amin, and he confirmed he understood, the effect of the Sentencing Guidelines and the difference between the Sentencing Guidelines and mandatory minimums set by Congress.[19] We explained to Mr. Amin, and he confirmed he understood, the plea agreement contained a waiver of his rights to a direct appeal and collateral attack expect for a claim on constitutional ineffectiveness of counsel.[20]

After our colloquy, we found Mr. Amin knowingly and voluntarily entered into the plea agreement, he understood the charges against him, his legal rights at trial, the mandatory minimum penalty, and the forfeiture of his right to a trial and appellate rights upon his guilty plea.[21]

### *We sentenced Mr. Amin in October 2020 to his proposed sentence.*

We sentenced Mr. Amin on October 7, 2020 to a term of 180 months; sixty months on the possession of a firearm in furtherance of a drug trafficking crime to run consecutive to all other counts and 120 months on the conspiracy to distribute controlled substances charge to run concurrently and sixty months on the remaining charges to run concurrently with credit for time served.[22] The conspiracy charge carried a mandatory minimum of ten years.

**II.    Analysis**

Mr. Amin returned a year later through newly retained counsel not appointed by the Court moving to vacate his sentence under 28 U.S.C. § 2255 raising four grounds: (1) he is in custody under a sentence imposed in violation of the Constitution or laws of the United States; (2) he did not enter a knowing, intentional, and voluntary plea; (3) the sentence is illegal and based on incorrect Sentencing Guidelines; and (4) subsequent changes in the law should apply retroactively to his sentence.[23] The parties agree newly retained counsel filed the petition and identified these broad grounds as a placeholder to preserve the timeliness of the petition.

Mr. Amin's habeas petition asserts there is no factual basis to support his plea and the United States did not have the evidence to prove an overarching conspiracy in the Skipworth drug trafficking organization. He argues the evidence shows only his involvement as a customer of Mr. Skipworth rather than a co-conspirator in the Skipworth drug trafficking organization. He then backdoors this sufficiency of the evidence argument through an ineffective assistance of counsel claim, arguing because he operated under a "misapprehension about what the evidence actually was and what that evidence meant," his guilty plea could not have been knowing and intelligent and thus we imposed the sentence in violation of the Constitution.[24] He blames his "misapprehension" on his plea counsel who advised him to plead guilty to the general overarching conspiracy even though the facts did not support his role as a co-conspirator and United States did not have the evidence to prove his role as a co-conspirator.[25]

Mr. Amin's newly retained counsel requested, and we granted, leave to submit an amended or supplemental habeas petition.[26] Mr. Amin again argued his plea is not knowing, intentional, and voluntary and asserted an ineffective assistance of trial counsel in violation of the Sixth Amendment.[27] The supplemental petition did not expand on the third and fourth grounds in his original petition; the sentence is illegal and based on incorrect Sentencing Guidelines and subsequent changes in the law should apply retroactively to his sentence. The United States opposed Mr. Amin's habeas petition.[28]

**A. There is no need for an evidentiary hearing as Mr. Amin's ineffective assistance of counsel claims are frivolous and not supported by the record.**

Congress in section 2255(a) permits a prisoner sentenced by a federal court to "vacate, set aside or correct" his sentence if: (1) it is "imposed in violation of the Constitution or laws of the United States"; (2) the court lacked "jurisdiction to impose" the sentence; (3) "the sentence exceeded 'the maximum authorized by law'"; or (4) it is "otherwise subject to collateral attack[.]"[29]

6

Under section 2255(b), we may only vacate a sentence if we find "judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[30]

Our first task is to evaluate whether Mr. Amin's claims are the exception to an evidentiary hearing. Congress in section 2255(b) requires us to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[31] To determine whether a hearing is necessary, we are directed by our Court of Appeals to apply a two-pronged inquiry: (1) we must "consider[ ] as true all appellant's nonfrivolous factual claims"; and (2) we must "determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel."[32] The second prong is evaluated under *Strickland v. Washington*, requiring Mr. Amin show deficiency of his counsel's performance and prejudice to his defense.[33] We are directed by our Court of Appeals Mr. Amin need not "prove" anything to warrant a hearing; if his nonfrivolous claims do not *conclusively* fail either prong of the *Strickland* test, we must hold a hearing.[34] This is a "reasonably low threshold for habeas petitioners to meet."[35]

Mr. Amin's core allegations are frivolous and are clearly contradicted by the record.[36] Mr. Amin concedes counsel advised him of the length of the sentence accompanying his guilty plea.[37] The issue, argues Mr. Amin, is he did not make his plea with "sufficient awareness of the relevant circumstances."[38] Unlike our Court of Appeals's analysis earlier this year in *Valenta*,[39] Mr. Amin is not arguing facts arising outside of our presence in the courtroom and confirmed by him before us. Mr. Amin must show Attorney Ibrahim's performance is so deficient as to fall below an objective standard of reasonableness.[40] We are "highly deferential" when assessing counsel's

7

performance and we are required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[41]

Our analysis begins with the charge. The United States charged Mr. Amin with conspiracy under 21 U.S.C. §§ 846 and 841 (a)(1), (b)(1)(A), (b)(1)(B). To obtain a conviction for conspiracy under 21 U.S.C. § 846 – Count I of the second superseding indictment charged against Mr. Amin – the United States must establish: "(1) a unity of purpose, (2) an intent to achieve a common goal, and (3) an agreement to work toward the goal."[42]

The existence of a conspiracy can be proved by circumstantial evidence and "can be inferred from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants . . . could not have been carried on except as the result of a preconceived scheme or common understanding."[43] The United States is not required to prove each defendant knew all of the conspiracy's details, goals, or other participants, but "must proffer sufficient evidence from which a jury could have concluded that each drug transaction in which [defendant] was involved was 'a step in achieving the conspiracy's common goal of distributing [controlled substance] for profit.'"[44]

A "simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy."[45] To determine whether a defendant's primary involvement is conspiratorial or a non-conspiratorial buyer-seller relationship, we are directed by our Court of Appeals to consider factors including, "the length of affiliation between the defendant and the conspiracy; whether there is an established method of payment; the extent to which transactions are standardized; and whether there is a demonstrated level of mutual trust."[46]

**1. The record supports Mr. Amin's involvement in the Skipworth drug trafficking organization.**

The United States outlined the factual basis for the plea before the plea hearing:

- Beginning in March 2018, law enforcement investigated the Skipworth drug trafficking organization in and around Philadelphia;

- As part of its investigation, the United States obtained court-authorized wiretaps of Mr. Skipworth and his associates, including Mr. Amin, between August and November 2018;

- The United States identified Mr. Amin in numerous intercepted calls with Mr. Skipworth and another associate in the drug organization showing Mr. Amin regularly purchased methamphetamine from Mr. Skipworth;

- The United States' investigation confirmed meetings between Mr. Skipworth and Mr. Amin to deliver a requested amount of drugs;

- Intercepted calls between Mr. Skipworth and Mr. Amin demonstrate the two discussing the need for firearms in their drug dealing;

- On December 11, 2018, the Drug Enforcement Agency executed a search warrant at Mr. Amin's house where agents found among other items, a firearm, multiple bags of heroin/fentanyl including a bag containing 767 individual stamp bags of heroin/fentanyl, a grinder, two digital scales, cocaine, methamphetamine, cocaine base, and PCP.[47]

The United States concluded "[b]ased upon the totality of intercepted calls, surveillance, and other evidence, an amount of 500 grams or more of a mixture and substance containing methamphetamine, 20 grams or more of actual methamphetamine and 100 grams or more of a mixture and substance containing a detectable amount of heroin was foreseeable to [Mr.] Amin during the course of the drug conspiracy."[48]

Mr. Amin does not contend his attorney failed to explain the evidence outlined in the United States' Change of Plea Memorandum. Indeed, his petition relies on the Change of Plea Memorandum to support his argument he is merely "a purchaser of controlled substances, rather than a co[-]conspirator in the Skipworth's drug organization."[49]

9

At our plea hearing, the United States recited the elements of each charge, including the conspiracy charge involving at least 500 grams of methamphetamine and at least 100 grams of heroin.[50] In our plea colloquy, Mr. Amin told us Attorney Ibrahim explained to him the elements of the charges.[51] The United States outlined the facts supporting the conspiracy charge set out in the Change of Plea Memorandum including the United States' investigation between April and December 2018 revealing Mr. Amin's participation in the Skipworth drug trafficking organization; interceptions of Mr. Amin "routinely buying controlled substances from Mr. Skipworth"; and the December 11, 2018 search warrant of Mr. Amin's home uncovering a firearm and controlled substances in a matter consistent with distribution.[52]

Mr. Amin acknowledged he heard the evidence the United States would prove at trial.[53] When asked during our colloquy, "Is that what happened?" Mr. Amin responded, "Yes." He admitted he committed the acts the United States charged.[54] Both the United States and Attorney Ibrahim agreed there is a fact basis for the charges against Mr. Amin.[55] Mr. Amin stipulated in the plea agreement to the drug quantities on the conspiracy to distribute methamphetamine and heroin, also reviewed at the plea hearing.[56]

Mr. Amin now challenges this evidence as an insufficient basis for his participation in the conspiracy. He argues the evidence, "at the absolute best," established his involvement in several, smaller conspiracies instead of an overarching conspiracy.[57] He concedes the evidence established he purchased drugs from Mr. Skipworth and then sold them to his own customers, but does not show his membership in the Skipworth conspiracy.

Mr. Amin puts the rabbit in the hat by concluding the evidence the United States would adduce at trial does not show his membership in an overarching conspiracy. Then, operating from his unsupported conclusion the evidence is insufficient to prove conspiracy, he asserts a claim for

10

constitutionally ineffective assistance of counsel for failing to advise him the evidence is insufficient to convict him on the conspiracy charge.

But the record does not support Mr. Amin's argument the evidence shows him as a casual buyer of drugs from Mr. Skipworth rather than a co-conspirator in the drug organization. The record reflects multiple calls, and transcripts of those calls, between Mr. Amin and Mr. Skipworth where Mr. Amin sought the purchase of drugs including methamphetamine, heroin, and fentanyl and a call where Mr. Amin asked Mr. Skipworth if he know if anyone wanted to buy heroin. In one transaction, Mr. Amin met Mr. Skipworth in the parking lot of Mr. Skipworth's girlfriend's apartment which Mr. Skipworth used as a stash/distribution location.[58] In another call, Mr. Skipworth agreed to deliver methamphetamine to Mr. Amin in exchange for Mr. Skipworth's pick-up of fentanyl from Mr. Amin.[59] Other calls between Mr. Amin to Mr. Skipworth discussed the need for firearms in their drug dealing and a call where Mr. Amin asked Mr. Skipworth if he had a gun Mr. Amin could borrow for someone who planned on robbing another drug dealer.[60]

These intercepted communications between Mr. Amin and Mr. Skipworth show more than a simple buyer-seller relationship. The communications show Mr. Amin's membership in the conspiracy; there is an affiliation between the two men, multiple calls between the two over a two-month period in the fall of 2018, discussions regarding interest in the sale of heroin to others, and meetings to pick up, deliver, and transfer drugs between the two men, all with a demonstrated level of mutual trust. Mr. Amin admitted at the plea hearing he committed the actions described by the United States to form the factual basis of its conspiracy charge.

There is simply no basis in the record to find Mr. Amin's trial counsel constitutionally ineffective for failing to advise Mr. Amin the evidence outlined by the United States in its Change of Plea Memorandum and at the plea hearing is insufficient to prove his role as a co-conspirator in

the Skipworth drug trafficking organization. He does not meet his burden of rebutting the "strong presumption" his plea counsel's conduct fell outside the "wide range" of reasonable professional assistance.[61] His present contention he did not make a knowing, intentional, and voluntary guilty plea as a result of his counsel's ineffectiveness is frivolous and clearly contradicted by the record. We need not take his allegations as true in assessing his claim to relief under section 2255. He presents the classic case of buyer's remorse. He agreed to a deal to recommend a sentence to avoid the risk of a much longer sentence should the jury find him guilty. The United States detailed the fact basis and elements of conspiracy. He agreed to them.

The record conclusively shows Mr. Amin's ineffective assistance of counsel claim is frivolous and contradicted by the record. "[B]ald assertions and conclusory allegations do not provide sufficient ground … to require an evidentiary hearing."[62] And where "the motion, files and records conclusively show that the movant is not entitled to relief, courts maintain the discretion to summarily dismiss a § 2255 motion."[63]

We dismiss Mr. Amin's 2255 petition without an evidentiary hearing.

### 2. Mr. Amin waived his remaining grounds for habeas relief.

Having disposed of the first two grounds of Mr. Amin's habeas petition, we turn to the third and fourth grounds: we imposed an illegal sentence and used the incorrect Sentencing Guidelines and changes in the law should apply retroactively to him.[64] Mr. Amin's supplemental briefing does not expand on these grounds, choosing instead to focus on the knowing, intentional, and voluntary plea issue and ineffective assistance of counsel.[65] The supplemental briefing does not attribute the claimed illegal sentence, incorrect Sentencing Guidelines, and change in the law to his counsel's ineffectiveness.

Mr. Amin waived all challenges to his conviction and sentence except for claims of constitutionally ineffective assistance of counsel.

### B. Mr. Amin's frivolous claims contradicted by the record do not warrant habeas relief.

We detailed our grounds for denying an evidentiary hearing finding Mr. Amin's claims are frivolous and contradicted by the record. This finding requires we deny Mr. Amin's habeas petition.

### C. We decline to issue a certificate of appealability.

An appeal may not be taken to our Court of Appeals from a "final order in a proceeding under section 2255" unless we issue a certificate of appealability.[66] A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."[67] "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[68] We decline to issue a certificate of appealability. Reasonable jurists could not disagree with our conclusion Mr. Amin's constitutional claims are frivolous and not supported by the record.

### III. Conclusion

Mr. Amin's habeas petition presents a classic case of buyer's remorse for agreeing to recommend we accept a sentence based on the substantial evidence shown to him and demonstrated to our satisfaction. He agreed to these terms after an extensive colloquy. He agreed to these terms days before the jury trial began. He faced a possible sentence far in excess of the recommendation which we accepted after careful analysis of the record and Mr. Amin's admission he committed the conspiratorial acts. His present claim of ineffective assistance is frivolous. He waived his substantive challenges to the sentence. His claims are frivolous based on the

13

uncontradicted record and repeated affirmations to us. There is no basis for an evidentiary hearing, no basis for habeas relief, and no basis for a certificate of appealability.

---

[1] ECF Doc. No. 24.

[2] ECF Doc. No. 86.

[3] ECF Doc. No. 157.

[4] ECF Doc. No. 185.

[5] ECF Doc. No. 185 at Counts One, Two, Five, and Six. The United States filed an information charging Mr. Amin's earlier conviction and sentence on state offenses in the Philadelphia Court of Common Pleas. ECF Doc. No. 244. The state court sentenced Mr. Amin on December 19, 2017 to a three-to-six-year term of imprisonment for his conviction on manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance in violation of Pennsylvania law, 35 Pa. Cons. Stat. § 780-113(a)(3), a "serious drug felony" defined by 21 U.S.C. § 802(57). Mr. Amin served a term of imprisonment on the state conviction of more than one year from which he was released within fifteen years of the offenses charged in the second superseding indictment.

[6] ECF Doc. No. 237.

[7] ECF Doc. No. 253.

[8] ECF Doc. No. 251.

[9] ECF Doc. No. 251, ¶ 4.

[10] *Id.* at ¶¶ 1, 12.a.

[11] *Id.* at ¶ 2.

[12] *Id.*

[13] *Id.* at ¶ 14.

[14] *Id.*

[15] ECF Doc. No. 467.

[16] *Id.* at 18.

[17] *Id.* at 19–20.

[18] *Id.* at 20.

[19] *Id.* at 20–24.

[20] *Id.* at 31.

[21] *Id.* at 37–38.

[22] ECF Doc. No. 433 at 3.

[23] ECF Doc. No. 444. Mr. Amin waived his right in the plea agreement to collaterally attack his conviction and sentence except the right to claim constitutionally ineffective assistance of counsel. *See* ECF Doc. No. 251, ¶ 14.

[24] These are the first two grounds of Mr. Amin's initial habeas petition. *See* ECF Doc. No. 444.

[25] ECF Doc. No. 473 at 9–11.

[26] ECF Doc. No. 446.

[27] ECF Doc. No. 473.

[28] ECF Doc. Nos. 480, 483.

[29] *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020) (quoting 28 U.S.C. § 2255(a)).

[30] 28 U.S.C. § 2255(b).

[31] 28 U.S.C. § 2255(b).

[32] *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021) (quoting *United States v. Dawson*, 857 F.2d 923, 927–28 (3d Cir. 1988)).

[33] *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[34] *Id.* (quoting *Dawson*, 857 F.2d at 928).

[35] *Id.* (quoting *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005)).

[36] *United States v. Valenta*, No. 20-1673, 2022 WL 265876, at *3 (3d Cir. Jan. 28, 2022) (footnote omitted). Mr. Valenta filed a pro se motion to vacate his sentence under § 2255 arguing, among other things, his lawyer provided ineffective assistance of counsel by failing to file an appeal after he requested an appeal before, after, and during his sentencing. *Id.* The district court denied relief without an evidentiary hearing and without assessing whether Mr. Valenta's allegations were frivolous or clearly contradicted by the record. *Id.* at *3, n.3. Examining Mr. Valenta's allegations,

15

our Court of Appeals found them neither frivolous nor clearly contradicted by the record. *Id.* at *3. It found the record silent on a discussion of appeal rights but concluded neither his misunderstanding about his reservation of appeal rights nor absence in the record regarding his appeal rights meant his allegations are frivolous or conclusively contradicted. Taking his allegations as true, then, our Court of Appeals examined whether he is "conclusively barred from relief" on his ineffective assistance of counsel claim. *Id.* The court of appeals found his allegations, taken as true, presented a colorable ineffective assistance of counsel claim entitling him to an evidentiary hearing on whether he asked his counsel to file an appeal before or after sentencing. *Id.* at *4. The court of appeals vacated the district court's order and remanded the case for an evidentiary hearing. We face much different facts and readily find Mr. Amin's habeas claims are frivolous based on the record before us. Unlike Mr. Valenta's case, we have a record here clearing contradicting Mr. Amin's allegation Attorney Ibrahim failed to advise him the evidence is insufficient to support his participation in the conspiracy resulting in an unknowing, involuntary plea.

[37] ECF Doc. No. 473 at 8.

[38] *Id.*

[39] No. 20-1673, 2022 WL 265876 (3d Cir. Jan. 28, 2022).

[40] *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020) (citing *Strickland*, 466 U.S. at 688).

[41] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[42] *United States v. Scales*, No. 20-2678, 2021 WL 3854765, at *3 (3d Cir. Aug. 30, 2021) (quoting *United States v. Bansal*, 663 F.3d 634, 665 (3d Cir. 2011)). *See also United States v. Williams*, 974 F.3d 320, 371–72 (3d Cir. 2020) (three basic elements for liability under § 846 to participate in a drug trafficking conspiracy: (1) a conspiracy, or "unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal"; (2) the defendant must be a member of the conspiracy, meaning "he must have known that the conspiracy would or did result in the distribution of a controlled substance"; and (3) if the indictment charges drug quantities under 21 U.S.C. § 841(b)(1)(A) or (b)(1)(B), "then the statutory maximum term of imprisonment is to be determined according to the amount of drugs involved in the conspiracy as a whole … [which] may be determined only according to the aggregate quantity of drugs involved in those violations of § 841(a) that were within the scope of the conspiracy, or in furtherance of it, and were reasonably foreseeable to the defendant as a natural consequence of his unlawful agreement.") (citations omitted).

[43] *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).

[44] *Id.* (quoting *United States v. Theodoropoulos*, 866 F.2d 587, 593 (3d Cir. 1989), *overruled on other grounds by United States v. Price*, 13 F.3d 711, 727 (3d Cir. 1994)).

[45] *Id.*

---

[46] *Id.* at 199.

[47] ECF Doc. No. 249.

[48] *Id.* at 12.

[49] ECF Doc. No. 473 at 3–4.

[50] ECF Doc. No. 467 at 33–34.

[51] *Id.* at 35.

[52] *Id.* at 35–36.

[53] *Id.* at 36.

[54] *Id.*

[55] *Id.* at 36–37.

[56] ECF Doc. No. 251, ¶¶ 1, 12.a.; ECF Doc. No. 467 at 16–17.

[57] ECF Doc. No. 473 at 5.

[58] ECF Doc. No. 249 at 7–9.

[59] *Id.* at 9.

[60] *Id.* at 10.

[61] *United States v. Schneider*, 852 F. App'x 690, 693 (3d Cir. 2021) (quoting *Strickland*, 466 .S. at 689).

[62] *United States v. Donahue*, 792 F. App'x 165, 168 (3d Cir. 2019) (quoting *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991)).

[63] *United States v. Eddings*, No. 19-293, 2022 WL 900343, at *8 (W.D. Pa. Mar. 28, 2022) (citing *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994)).

[64] *See* ECF Doc. No. 444.

[65] *See* ECF Doc. No. 473.

[66] 28 U.S.C. § 2253(c)(1)(B).

[67] 28 U.S.C. § 2253(c)(2).

---

[68] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).